## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ADELINO MERCADO, JR. and )
ELIZABETH GARIBAY-MERCADO, )
                                    )
           Plaintiffs, )
                                    )
           v. )                   Case No. 23-2052-HLT-ADM
                                    )
ARROW TRUCK SALES, INC. and )
TRANSPORT FUNDING, LLC, )
                                    )
           Defendants. )

## MEMORANDUM AND ORDER

This case arises out of a transaction in which pro se plaintiffs Adelino Mercado, Jr. and Elizabeth Garibay-Mercado (the "Mercados") purchased a 2017 Kenworth semi-truck ("the truck") from defendant Arrow Truck Sales, Inc. ("Arrow"), which defendant Transport Funding, LLC ("Transport Funding") financed. The Mercados stopped making payments and filed this lawsuit seeking to recover the amounts they already paid, as well as a release of any security interest defendants claim in the truck. Meanwhile, Transport Funding asserts counterclaims in which it seeks to recover amounts it claims the Mercados owe pursuant to the Security Agreement they signed. This matter is now before the court on plaintiffs' Motion to Compel Discovery Responses. (ECF 80.) By way of this motion, the Mercados ask the court to compel Arrow and Transport Funding to respond to document requests and interrogatories. For the reasons explained below, the motion is granted in part and denied in part.

### I.      BACKGROUND

In 2021, the Mercados (who are married) purchased the truck from an Arrow dealership in California. (ECF 1-5.) They paid Arrow a $25,000 down payment and financed the remainder of the purchase with a loan from Transport Funding. (ECF 1-4, 1-5, 12-1.) They applied for the loan

by submitting a Transport Funding Credit Application to the Arrow dealership. (ECF 1-2.) About a week later, the Mercados and Arrow entered a Security Agreement for the purchase of the truck. (ECF 12-1.) The Security Agreement provides that it "is to be sold and assigned only to Transport Funding, L.L.C." (ECF 12-1 ¶ Q.)

From February 2021 to October 2022, the Mercados mailed monthly payments on the loan to Transport Funding. (ECF 1, at 3; ECF 1-4.) But when they stopped making payments, Transport Funding sent the Mercados a demand letter. (ECF 1-14, at 6; ECF 24-1 ¶ 5.) When the Mercados still had not paid by December 2022, Transport Funding retained a law firm to try to collect the approximately $26,000 allegedly remaining on the loan. (ECF 1-14, at 18-19.)

On February 6, 2023, the Mercados filed their complaint in this lawsuit. They allege defendants violated the Consumer Credit Act and that the "[d]own payment and Payment agreement" are "VOID FOR BREACH OF CONTRACT LAW." (ECF 1-1, at 1-3; ECF 2.) The complaint alleges the Security Agreement is not an enforceable contract because defendants did not disclose to the Mercados that "the debt will be paid/settled/discharge[d]/funded in full by the Federal Reserve." (ECF 1-1, at 5-6.) Plaintiffs' theory of liability is that their debt to Transport Funding was discharged when they provided their consumer information (such as social security numbers) to Transport Funding and signed the Security Agreement. (ECF 81-1, at 7 (Depo. Tr. of Adelino Mercado, Jr.)) According to the Mercados, with the Credit Application and Security Agreement in hand, Transport Funding had the option to create "credits . . . for notes" to be paid by the Federal Reserve Bank (*id.* at 8), and that, under "GAAP" (i.e., Generally Accepted Accounting Principles), the value created by that option covered the cost of the loan (ECF 1-1, at 8). The Mercados take the position that Transport Funding should have, but did not, credit any amount the Federal Reserve Bank gave to their Transport Funding account ending in 001. (*Id.*)

2

Thus, the Mercados claim that defendants' attempts to pursue collection of this discharged or nonexistent loan amounts to "contract fraud" and illegally "enriching themselves by collecting on the extension of credit by extortionate means." (ECF 80-1, at 1.) Based on this theory, the Mercados seek to recover the amounts of the payments they made on the truck and a release of any security interest defendants claim in the truck, among other things. (ECF 1-1, at 3.) Transport Funding has filed counterclaims for breach of the Security Agreement and unjust enrichment. (ECF 12.)

On January 18, 2024, the Mercados served a set of 34 interrogatories in a document titled "Interrogatories Regarding the Procedures of the Consumer Credit Transaction Agreement Affidavit" and a set of 31 requests for production of documents ("RFPs") in a document titled "First Request for Production of Documents of Debt Validation Confirmation and Legal Action for Debt Collection." (ECF 80-1, 80-2.) On February 9, defendants served responses to both sets of discovery in which they asserted objections to every single interrogatory and RFP. (ECF 80-3, 80-4.)

On February 20, the court convened a discovery conference at defendants' request to address "whether plaintiffs must sit for their scheduled depositions before receiving discovery from defendants to which plaintiffs contend they are entitled," *i.e.*, answers to the interrogatories and RFPs. (ECF 79.) The court ordered the Mercados to appear for their depositions as scheduled but granted them leave to file the current motion to compel the requested discovery.[1] (*Id.*)

---

[1] For this reason, defendants' argument that the court should strike the motion for failure to confer or request a pre-motion hearing is without merit. As the Mercados note, defendants never objected during the hearing to setting this issue for motion practice, nor did defendants move for reconsideration of the court's written order on the same.

Defendants deposed plaintiff Adelino Mercado, Jr. on February 23.  Defendants state that, until the deposition, they did not understand "what claims" the Mercados are asserting in this action, but Mr. Mercado's deposition "revealed, for the first time, the exact nature of the pending claims and causes of action."  (ECF 81, at 5.)  In other words, defendants did not have a full appreciation of the Mercados' theory of recovery when defendants answered the Mercados' discovery requests on February 9.  But after the deposition, defendants still did not supplement their discovery responses.

On March 14, the Mercados filed the current motion to compel.  (ECF 80.)  By way of this motion, the Mercados ask the court to compel defendants to fully respond to Interrogatory Nos. 5-15, 17, 18, 21, 24, 27, and 29-34, and to RFP Nos. 1, 3-6, 8, 9, 14-17, 22, and 24-28.

## II.    LEGAL STANDARDS

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel.  FED. R. CIV. P. 37(a).  In response to a motion to compel, the responding party has an opportunity to reassert and offer support for objections made in the discovery responses themselves.  Any objection the responding party does not reassert in its response to a motion to compel is deemed abandoned.  *See Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013) ("[O]bjections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned."); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404, 2011 WL 13233153, at *2 (D. Kan. Sept. 28, 2011) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." (internal quotations and citation omitted)).

III.    **ANALYSIS**

Defendants' response to plaintiffs' motion to compel makes one procedural argument and reasserts two objections to answering most of the discovery.  The court will address each argument in turn.

A.    <u>**Procedural Challenge to Number of Interrogatories Served**</u>

To begin, defendants argue that plaintiffs violated Federal Rule of Civil Procedure 33(a) by serving more than 25 written interrogatories.  FED. R. CIV. P. 33(a) ("Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.").  According to defendants, in August of 2023, the Mercados served 27 "inquiries," to which defendants responded.  Defendants contend that the inquiries were, in substance, interrogatories.  Accordingly, defendants argue, the court should strike the second set of interrogatories the Mercados served on January 18 on the grounds that they exceed the maximum number allowed by Rule 33.

The court rejects this argument for two reasons.  First, defendants have not submitted copies of whatever the Mercados served in August so that the court can decide whether the items defendants label "inquires" should be deemed Rule 33 interrogatories.  Second, and more obviously, defendants answered the January interrogatories without objecting that they exceeded the maximum number allowed by the Federal Rules.  (*See* ECF 80-3.)  Objections not asserted in interrogatory responses are deemed waived.  FED. R. CIV. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived . . . ."); *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 632, 633 (D. Kan. 2012) ("[T]he court will deem waived any objections not asserted in the initial response to a discovery request but raised in a response to a motion to compel."); *Cardenas v. Dorel Juv. Grp., Inc.*, 230 F.R.D. 611, 621 (D.

Kan. 2005) ("It is also well settled that when a party fails to assert an objection in its initial response to the discovery request and raises it for the first time in response to a motion to compel, the objection is deemed waived.").   The closest defendants came to objecting to the number of interrogatories is the following general statement: "The discovery requests fail to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court. *See* Fed. R. of Civ. P. 33." (*Id.* at 1.)   This statement is too ambiguous and general to put a reasonable person on notice that defendants were objecting to the number of interrogatories served, particularly given that defendants went on to answer each individual interrogatory.   The court therefore denies defendants' untimely request to strike the interrogatories as exceeding the number allowed.

### B.   <u>Relevance Objections</u>

Next, defendants assert that the discovery plaintiffs seek in Interrogatory Nos. 5-8, 10, 11, 13-15, 17, 18, 21, 24, 27, and 29-34, and in RFP Nos. 4-6, 8, 9, 15-17, 22, 24, and 26-28 is not relevant to the claims or defenses in this case.   The party seeking discovery bears the initial burden to establish its relevance.   *See Sperry v. Corizon Health, Inc*., No. 18-3119-EFM-ADM, 2020 WL 5642343, at *2 (D. Kan. Sept. 22, 2020); *Landry v. Swire Oilfield Servs., L.L.C*., 323 F.R.D. 360 (D.N.M. 2018); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).   At the discovery stage, relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) ("[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case will be deemed relevant."); *Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly

construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)).  Relevance is often apparent on the face of the discovery request.  *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006).

When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections.  *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (ruling the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.").  The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad."  *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004).  Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."  *Id*. at 670-71.

The court has fully reviewed the subject discovery and defendants' relevance objections to the same.  Under the liberal relevance standards applicable at this stage in the proceeding, the court finds the discovery relevant to plaintiffs' theory of liability (as summarized in Section I above) and therefore overrules all of defendants' relevance objections.  Although the pro se plaintiffs' complaint is not structured or worded as artfully as one an attorney might draft, defendants

acknowledge that they obtained clarity about plaintiffs' claims and theory of the case from Mr. Mercado during his February 23 deposition.  (ECF 81, at 5 (acknowledging he "revealed, for the first time, the exact nature of the pending claims and causes of action")).)  At that point, it was incumbent on defendants to review their discovery responses in this new light of clarity and to amend or supplement the responses where appropriate.  Instead, defendants responded to the motion to compel by broadly reasserting their relevance objections.

For example, the first disputed interrogatory asks, "Does TRANSPORT FUNDING accept all specie of money/payment instruments, mandated by the Federal Reserve Bank?"  (ECF 80-3, Interrogatory No. 5.)  This interrogatory is facially relevant because it bears on plaintiffs' theory that the truck loan was paid off when Transport Funding had the means to collect credit/notes in the amount of the loan from the Federal Reserve Bank.  (*See* ECF 81-1, at 8 (Depo. Tr. of Adelino Mercado, Jr.).)  Defendants have not attempted to meet their burden to show that the interrogatory is not relevant; they only make a conclusory assertion that "this purported request is not relevant to the instant case."  (ECF 80-3, at 6.)  As discussed above, such a boilerplate objection, without more explanation, does not carry defendants' burden.  Similarly, several interrogatories address Transport Funding's accounting system and whether Transport Funding contends it complies with GAAP accounting principles.  (*See, e.g.,* ECF 80-3, Interrogatory Nos. 8, 10, 11, 13, 14, 15, 21, 29, 31, and 32.)  These interrogatories are facially relevant because they bear on plaintiffs' theory that, under GAAP, Transport Funding should have credited the value created by Transport Funding's option to obtain notes from the Federal Reserve Bank to plaintiffs' account ending in 001.  (ECF 1-1, at 8.)  The burden thus shifted to defendants to support their objections that GAAP is not relevant to this litigation.  Defendants did not attempt to meet this burden in either their

original discovery responses, any supplemental discovery response, or in response to the motion to compel.

The same can be said of all of defendants' relevance objections. Indeed, their lack-of-relevance rationale is difficult to ascertain. For example, defendants articulate the Mercados' theory of the case, but then state in conclusory fashion that the Mercados' discovery requests are "completely irrelevant and immaterial" because defendants have "already produced all responsive documents . . . relating to the sale and financing of the [t]ruck." (ECF 81, at 6.) Defendants also cite charts where they apparently cut-and-pasted the objections from their discovery responses, which are equally conclusory and unhelpful. Based on these arguments, the best the court can glean is that defendants seem to be arguing that only information that supports their theory of the case is relevant, whereas information that might bear on plaintiffs' theory of the case is not. But that is not the standard for relevance. Accordingly, the court overrules defendants' relevance objections.

### C. <u>Legal-Conclusion Objections</u>

Defendants also reassert their objections to answering Interrogatory Nos. 7, 11, 14, 15, 17, 24, 27, 29, 31, 33, and 34 on the ground that each "improperly seek[s] legal conclusions, which Defendants cannot be compelled to answer." (ECF 81, at 8.) Defendants read the law prohibiting requests for legal conclusions too broadly.

Defendants are correct that a party may not demand another party give a "pure legal conclusion." *Kendrick v. Sullivan,* 125 F.R.D. 1, 3 (D.D.C. 1989). Thus, an interrogatory is impermissible "if it seeks issues of 'pure law,' that is, one that 'extends to legal issues unrelated to the facts of the case.'" *George K. Baum Advisors LLC v. Sprint Spectrum, L.P.*, No. 11-2442-JTM, 2013 WL 5255019, at *4 (D. Kan. Sept. 17, 2013) (quoting *Holland v. GMAC Mortg.*, No.

03–2666–CM, 2005 WL 1285678, at *3 (D. Kan. May 27, 2005)).   However, Rule 33(a)(2) specifically permits discovery about an opponent's legal contentions.   It states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to . . . the application of law to fact."  *See also George K. Baum*, 2013 WL 5255019, at *4 (quoting *Holland* 2005 WL 1285678, at *3) ("[A]n 'interrogatory is not objectionable merely because it calls for a legal conclusion or opinion.'").   Courts have long recognized that "requests for opinions or contentions that call for the application of law to fact . . . can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery."  *Oklahoma v. Tyson Foods, Inc.,* 262 F.R.D. 617, 630 (N.D. Okla. 2009) (quoting 1970 Advisory Committee Notes to Rule 33); *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000) (same).   Indeed, the 2007 Advisory Committee Notes to Rule 33 recognize that such "contention interrogatories are used routinely."

Although the pro se plaintiffs did not word Interrogatory Nos. 7, 11, 14, 15, 17, 24, 27, 29, 31, 33, and 34 as overtly as an attorney might write contention interrogatories, that is what they are in substance.   The Mercados do not seek legal opinions about general matters, but instead ask defendants' views on how particular principles apply to the facts in this case.   In most instances, the Mercados ask defendants to state whether they contend that the terms of the Security Agreement permit certain actions.   For example, Interrogatory No. 11 asks whether the Security Agreement recognizes that "money" may come in many forms, such as Federal Reserve Bank notes.  (ECF 80-3, at 8.)   And Interrogatory No. 31 asks whether the terms of the Security Agreement required Transport Funding to follow GAAP accounting principles in processing the transaction for the truck's purchase.   Such contention interrogatories are appropriate.   Defendants

have not called out a single interrogatory that seeks a "pure legal conclusion" not tied to the facts in this case.  Defendants' legal-conclusion objections are therefore overruled.

## IV.   APPLICATION

The court has overruled the objections defendants reasserted in response to plaintiffs' motion to compel.  As discussed above, defendants waived objections originally asserted in their discovery responses but not reasserted in response to the motion.  Nonetheless, the court has reviewed each interrogatory and RFP at issue for compliance with discovery rules and comprehensibility.  In light of that review, the court grants in part and denies in part plaintiffs' motion to compel.  Specifically, the court orders as follows:

1. **Defendants need not provide further responses to RFP Nos. 24 and 25, or to Interrogatory Nos. 6, 9, 10, 12, 32, and 33.**

Defendants answered Interrogatory No. 6 despite their objections insofar as they state that Transport Funding provided funding for the transaction.  The court is satisfied that this answer is fully responsive to the interrogatory.  For this reason, the court will not order defendants to supplement their answer to Interrogatory No. 6.

Interrogatory Nos. 9 and 10 asked defendants to produce documents.  This is not proper for an interrogatory under Federal Rule of Civil Procedure 33.  Interrogatories should be in the form of questions.  Regardless, defendants agreed to produce documents in response to these interrogatories.

In addition, the court finds the wording of RFP Nos. 24 and 25, and Interrogatory Nos. 12 and 32 to be so vague and ambiguous as to require "the answering party to 'engage in mental gymnastics to determine what information may or may not be remotely responsive.'" *Pipeline Prods. Inc. v. Madison Cos., LLC,* No. 15-4890-KHV, 2018 WL 3055869, at *3 (D. Kan. June 20, 2018) (quoting *Aikens v. Deluxe Fin. Servs.*, 217 F.R.D. 533, 537-38 (D. Kan. 2003)).  Such

discovery is stricken as "unduly burdensome on its face." *Id.* (quoting *Aikens*, 217 F.R.D. at 538). The court will not order defendants to respond to discovery that the court itself does not understand and cannot interpret.

Finally, Interrogatory No. 33 is duplicative of Interrogatory No. 29, so defendants need not answer it.

2.    **Defendants must respond to RFP Nos. 3-6, 8, 9, 15-17, 22, and 26-28, and Interrogatory Nos. 7, 17, 18, 27, 29, and 30, as modified below.**

As to this discovery, the court finds pro se plaintiffs' original wording to be vague and/or ambiguous, making it very difficult to answer.  In many RFPs, for example, plaintiffs asked defendants to "list" or "identify" certain things, rather than asking defendants to produce documents related to such things.  Plaintiffs' motion-to-compel briefing, however, clarified the meaning of these discovery requests.  (ECF 80, at 2-10.)  The court has re-worded this discovery to remove confusing language.  Defendants are directed to respond to the discovery, modified as follows:[2]

> RFP No. 3: Produce documents sufficient to show the source of funds for the account ending in 001, including documents referencing computer file names, database names, and locations tied to that account.
>
> RFP No. 4: Produce documents sufficient to show where funds of $81,708.73 were held prior to opening and funding the account ending in 001.
>
> RFP No. 5: Produce documents sufficient to show individuals who owned or had signature rights to any account that credited the account ending in 001 at its opening.
>
> RFP No. 6: Produce documents that identify the account(s) that was debited $81,708.73 when the account ending in 001 was created.
>
> RFP No. 8: Produce documents that show the extent to which funds placed in the account ending in 001 originated from another account or lending institution.

---

[2] The court recognizes that defendants may not have documents responsive to some of these RFPs in their possession, custody, or control.  Where that is the case, defendants' response should simply so state.

RFP No. 9: Produce documents that show the name and address of any lending institution involved in providing the funds used to originate the account ending in 001.

RFP No. 15: Produce documents sufficient to show the employee who authorized the alleged loan transaction to plaintiffs for account 001.

RFP No. 16: Produce documents that identify and describe any loan-origination system or software that was used to open the account ending in 001.

RFP No. 17: Produce documents showing the name and address of any bank auditor or certified public accountant involved in performing accounting for the account ending in 001.

RFP No. 22: Produce documents that show whether an account (other than the account ending in 001) was created in the amount of the purported loan to plaintiffs and then debited to fund the account ending in 001.

RFP No. 26: Produce documents sufficient to show whether any insurance claims have been made regarding the account ending in 001.

RFP No. 27: Produce documents sufficient to show the extent to which any tax write-off has been made regarding the account ending in 001.

RFP No. 28: Produce documents sufficient to show the extent to which any tax deduction has been made regarding the account ending in 001.

Interrogatory No. 7: Do you contend that you complied with the Uniform Commercial Code with respect to the financial transaction with plaintiffs?

Interrogatory No. 17: Did Transport Funding use plaintiffs' social security cards and the Security Agreement to obtain a specie of money that Transport Funding then used to loan plaintiffs money for the purchase of the truck?

Interrogatory No. 18: Does the Security Agreement provide that Transport Funding will pay plaintiffs money that Transport Funding obtained from another lender using plaintiffs' social security cards and the Security Agreement, or does it provide that plaintiffs be given something of equal value, such as the truck.

Interrogatory No. 27: Do Transport Funding's accounting records show that Transport Funding credited the value it obtained from receiving plaintiffs' Credit Application and Security Agreement (the value being the option to create credits for notes to be paid by the Federal Reserve Bank) to the account ending in 001?

Interrogatory No. 29: Does the Security Agreement disclose that Transport Funding would exchange the Security Agreement for something of equal value, which Transport Funding would then give plaintiffs as a loan for the truck?

Interrogatory No. 30: Did Transport Funding intend to follow GAAP principles in servicing the loan?

3. **Defendants must fully respond to RFP Nos. 1 and 14, and Interrogatory Nos. 5, 8, 11, 13-15, 21, 24, 31, and 34.**

The court finds these discovery requests to be understandable enough and in compliance with discovery standards. Accordingly, defendants are ordered to respond to them as written. The court reminds defendants of their obligation to "exercise 'common sense' and attribute ordinary definitions to terms in discovery requests" that plaintiffs did not otherwise specially define. *Smash Tech., LLC v. Smash Sols., LLC*, 335 F.R.D. 438, 449 (D. Utah 2020). Many of the interrogatories allow defendants to respond with only a "yes" or "no" answer.

Where so ordered above, defendants must serve plaintiffs their supplemental discovery responses by **April 23, 2024.**

V. **SANCTIONS REQUEST**

Plaintiffs' motion also asks the court to award them "reasonable expenses, including my fees, incurred in making this Motion." (ECF 80, at 1.) Federal Rule of Civil Procedure 37(a)(5)(C) provides that when a court grants in part and denies in part a motion to compel discovery, it may, in its discretion, award the movants their "reasonable expenses" incurred in making the motion. Here, plaintiffs are proceeding pro se and therefore did not incur attorney's fees in bringing the motion. *See Grays v. Auto Mart USA, LLC*, No. 21-1312, 2022 WL 2763096, at *4 (10th Cir. July 15, 2022) ("Rule 37 does not empower the district court to award attorney fees to a pro se litigant."); *Creative Gifts, Inc. v. UFO*, No. 97-1266 LH/WWD, 1998 WL 36030443, at *2 (D.N.M. Aug. 10, 1998) ("[T]here is no justification for an award of attorney fees for *pro se* litigants who have expended no money for legal representation."). Nor do plaintiffs suggest that

they incurred any other expenses in bringing the motion.  In addition, defendants' discovery responses were substantially justified in instances where plaintiffs' requests were inartfully worded and confusing.  Under these circumstances, the court declines to award sanctions.

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Compel Discovery Responses (ECF 80) is granted in part and denied in part, as set forth above.  Where so ordered, defendants must supplement their discovery responses by **April 23, 2024.**

**IT IS FURTHER ORDERED** that, to account for defendants' supplemental production, the pretrial conference is re-set for **May 21, 2024, at 1:30 p.m**. by Zoom.  The parties must submit their proposed pretrial order by **May 7, 2024**.

Dated April 9, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge