IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ADELINO MERCADO, JR., et al.,

    Plaintiffs/Counterclaim Defendants,

v.

TRANSPORT FUNDING, LLC, et al.,

    Defendants/Counterclaim Plaintiffs.

Case No. 2:23-cv-02052-HLT

## MEMORANDUM AND ORDER

Pro se plaintiffs Adelino Mercado, Jr. and Elizabeth Garibay-Mercado[1] filed this action challenging the financing of a vehicle. They purchased a semi-truck from Defendant Arrow Truck Sales, Inc. ("Arrow") and financed the purchase through Defendant Transport Funding, LLC ("Transport"). Plaintiffs initially made regular payments on the loan but then stopped. Plaintiffs sued Defendants and claimed that their debt is discharged. Transport counterclaimed for breach of contract and unjust enrichment. The parties filed cross motions for summary judgment. Docs. 110, 113.

Plaintiffs' theory of debt discharge has no basis in law, and there is no other basis of liability against either defendant. The Court does not question Plaintiffs' genuine belief in their theory. But the theory is legally groundless. Conversely, Transport has established its breach-of-contract counterclaim. Plaintiffs are bound by the security agreement they signed, and they must comply with its provisions. The Court therefore denies Plaintiffs' motion and grants Defendants' motion.

---

[1] The Court is mindful of Plaintiffs' pro se status and liberally construes their pleadings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court will not take on the role of advocate. *Id.*

**I.    BACKGROUND**[2]

Plaintiffs, who are married, bought a semi-truck from Arrow in 2021. The purchase price was $46,000. The total with fees and warranties was $63,101. Plaintiffs paid Arrow $25,000 as a down payment and financed the rest through Transport. Transport arranged for Arrow to be paid the remainder due for Plaintiff's semi-truck. Transport borrowed the funds to pay Arrow from Volvo Financial Services ("Volvo"). Transport has since repaid Volvo in full. Plaintiffs did not know of Volvo's involvement until they received discovery in this case.

Plaintiffs signed a security agreement with Transport. Plaintiffs agreed to make thirty-nine monthly payments of $1,454.07. They also agreed to use the semi-truck only for business purposes while operating under the security agreement. Plaintiffs made twenty monthly payments from February 2021 through October 2022. But they have made no payments since October 2022. They are now nineteen monthly payments in default and still possess the truck.

Plaintiffs have not paid Transport the entire amount owed under the agreement. They owe the principal amount of $27,627.33. No third party (including Volvo) has paid Transport the original or remaining balance of Plaintiffs' debt. And Plaintiffs now owe Transport for unpaid interest and delinquency fees. Both continue to accrue. They were $9,779.57 and $1,821.97 respectively through October 4, 2024. The agreement provides that Transport may take possession

---

[2]   For purposes of summary judgment, the following facts are uncontroverted or recited in the light most favorable to the nonmoving party. The Court pulls many facts from the stipulations contained in the pretrial order (Doc. 107). Plaintiffs did not controvert any of Defendants' proposed undisputed facts. *See generally* Doc. 119. The Court understands that Plaintiffs proceed pro se. But Defendants sent Plaintiffs the materials required by D. Kan. R. 56.1(d). Plaintiffs were on notice of what they needed to do in response to Defendants' summary judgment motion. Plaintiffs instead focused on reiterating their arguments and justifying new arguments. Neither tactic helps Plaintiffs' case survive Defendants' challenge. And Plaintiffs did not help their case with their own motion. They did not include citations to the record in support of their proposed undisputed facts. *See generally* Doc. 113. They instead filed a second eighteen-page document titled "Comprehensive Analysis of Exhibits in Support of Summary Judgment." Doc. 113-1. This document purports to explain the relevance and significance of Plaintiffs' evidence. But when added to Plaintiffs' forty-five page summary judgment brief, the total pages submitted far exceeds the page limits authorized by the Court. The Court would be justified in striking it. But the Court considers it because the content of the "comprehensive analysis" does not change the outcome of this case.

of the vehicle if Plaintiffs default. Plaintiffs never answered or filed a responsive pleading to Transport's counterclaims for breach of contract and unjust enrichment.

## II.     STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts applying this standard view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation and citation omitted).

## III.    ANALYSIS

Applying the law to the facts in this case should not be complicated. This was a simple transaction. Plaintiffs agreed to purchase a semi-truck and signed papers to finance it. They later learned of a theory that they thought relieved them of the burden to repay the loan: Plaintiffs' debt was discharged immediately upon Transport's acceptance of the security agreement. The Court is unaware of <u>any</u> court that has accepted this theory. This theory is unfounded, illogical, and incorrect. Plaintiffs genuinely believe in this theory and pursue it, citing many irrelevant statutes and rules in support. The Court does not address every argument Plaintiffs raise, as most of them fall with the failure of Plaintiffs' overarching theory. Plaintiffs are nevertheless assured that the Court has reviewed their briefs and arguments at length, even those portions not addressed below.

### A. Plaintiffs' Claims.

Plaintiffs' description of their purported claims in the pretrial order is unconventional. The claims lack clarity. But the Court addresses the claims as Plaintiffs frame them, after discussing the overarching legal theory used to advance them.

#### 1. Overarching Legal Theory.

The Court first addresses Plaintiffs' overarching legal theory because Plaintiffs' claims generally rise or fall based on the theory. The pretrial order contains the following stipulation:

> The Mercados' sole theory of liability against Arrow and Transport Funding is that, once the Mercados signed the Transport Funding loan documents, which contained the Mercados' social security numbers, address, and driver license numbers, the debt the Mercados owed to Transport Funding was discharged by the United States Federal Reserve so the Mercados no longer owed any debt to Transport Funding and Arrow should reimburse the Mercados for the $25,000 down payment made on the Truck.

Doc. 107 at 2-3.[3] Plaintiffs claim that they are entitled to a return of all amounts paid for the semi-truck and claim that they are entitled to retain possession of the semi-truck. Defendants term Plaintiffs' theory of liability as a "redemptionist" or "vapor money" theory. Plaintiffs avoid this language. But their allegations are consistent with the theory; they contend that the only forms of money with intrinsic value are gold and silver. Doc. 113 at 13.

For example, Mr. Mercado testified in deposition: "I won't get too deep into this at the moment, how we pulled away from the gold standard in America so our federal reserve notes, U.S. dollars everyone calls them, can no longer buy gold. So there's no real money in circulation." Doc. 111-5 at 32-33. He also explained, "The only real money, the only real dollar that truly exists by

---

[3] The parties quibble over whether this is Plaintiffs' sole "claim." The Court need not resolve this dispute because it does not change the outcome of the case.

law is either silver or gold coin with weight. If it doesn't have weight, it's monopoly money." *Id.* at 42.

Plaintiffs also explain that their debt was discharged because when they signed the agreement with Transport, it created credit, serving as "valid and lawful medium of exchange." Doc. 113 at 13. Plaintiffs claim that "[w]hen [they] gave [their] consumer credit information and signed the promissory note to Transport Funding, it created value in the form of digital credits to be used for the purchase of the truck, similar to a cashier's check, containing credits of value" and "[t]he credits created by the promissory note can be exchanged for Federal Reserve notes[.]" *Id.* at 7-8. They contend that when Transport accepted the agreement, their debt was discharged. *Id.* at 3.

Plaintiffs' explanation of their theory models the tenets of the "vapor money" theory, which has been explained thus:

> The genesis of the vapor money theory is that the decision by the United States in 1933 to discard the gold standard resulted in the federal government's bankruptcy, after which lenders have been creating unenforceable debts because they are lending credit rather than legal tender. Accordingly, under the vapor money theory, a loan imposes no repayment obligation if the indebtedness was funded with credit as opposed to hard currency. The essence of the vapor money theory is that the promissory notes (and similar instruments) are the equivalent of money that citizens literally create with their signatures.

*Thomas v. All In Credit Union*, 2023 WL 9197752, at *8 (S.D. Ala. 2023) (citation omitted), *report and recommendation adopted*, 2024 WL 312682 (S.D. Ala. 2024).

Courts have summarily, universally, and rightly rejected this theory. *See, e.g.*, *id.*; *Adams v. Partners*, 2025 WL 101615, at *5 (E.D. Wis. 2025); *Farina v. Navy Fed. Credit Union*, 2024 WL 3333270, at *2 (N.D. Fla. 2024), *report and recommendation adopted*, 2024 WL 3330586 (N.D. Fla. 2024); *Marshall v. Mechanics Bank Auto Fin.*, 2023 WL 2628674, at *2 (C.D. Cal.

2023); *Podgorny v. Ally Fin.*, 2022 WL 672676, at *2 (D. Ariz. 2022) (noting that redemptionist arguments are "frivolous legal arguments made in an attempt to avoid paying for the car"); *Price v. Lakeview Loan Servicing, LLC*, 2021 WL 1610097, at *4 (M.D. Fla. 2021); *Swain v. Dir. of Corr.*, 2019 WL 7020322, at *2 (N.D. Cal. 2019); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 213-14 (D. Conn. 2010) (collecting cases). This Court likewise rejects the theory because there is no support for it in the law.

Apart from lacking a legal basis, the evidence also does not support Plaintiffs' theory. Mr. Mercado admitted in his deposition that he is unaware of evidence supporting Plaintiffs' position that the Federal Reserve paid Transport to discharge Plaintiffs' debt. Plaintiffs have not been told by a lawyer or accountant that Transport was paid for Plaintiffs' debt by other sources. And they do not have anything in writing from a third party that shows that another source has paid their debt to Transport. They do not have an expert to testify that any third party paid off their loan.

The evidence instead supports the conclusion that Transport has not been paid by a third party for the amounts that Plaintiffs owe. Transport's CEO and Arrow's Vice President of Operations both stated in affidavits that their respective companies never created credits or a "value of credits" based on Plaintiffs' signing documents with them.[4] Neither company has received payments from the Federal Reserve related to Plaintiffs' agreement. And the outstanding balance from Plaintiffs' agreement with Transport remains due and owing.

The statutes, rules, and regulations cited by Plaintiffs do not change this outcome. First, Plaintiffs did not preserve in the pretrial order any of them as the basis for a claim. But even if they had, none of them relieve Plaintiffs of their obligations under the agreement or otherwise support Plaintiffs' claim that they did not owe the debt. None of them provides a private cause of

---

[4] Plaintiffs assert without support that the affidavits contain perjured testimony.

action, as Plaintiffs acknowledge.⁵ And they do not support Plaintiffs' theory, even if patched together as Plaintiffs attempt to do. The Court declines to address them further.

### 2. Plaintiffs' Claims.

The Court now turns to the claims Plaintiffs allege in the pretrial order. Plaintiffs describe them as follows:

> i. <u>Void the Security Agreement</u> – The Security Agreement should be rendered void since its inception because defendants procured it by fraud.
>
> ii. <u>Unjust Enrichment</u> – The Mercados conferred a benefit on defendants by entering into the Security Agreement, which then allowed Transport Funding to obtain digital credits. Defendants knew about this benefit, and it would be inequitable to allow them to retain this benefit without paying its value.
>
> iii. If Transport Funding did indeed repay Volvo, it would be unethical and unreasonable for them to manipulate the situation by fabricating harm, thus deceiving the court with false claims of injury that are self-inflicted.

*Id.* at 10.

First, Plaintiffs claim that the agreement with Transport suffers from fraud in the inception on two grounds: (1) Defendants failed to disclose that Plaintiffs' debt was discharged when they signed the agreement; and (2) Transport did not disclose that Volvo was the party providing the funding.⁶ The first argument fails because Plaintiffs have no evidence that their debt was discharged upon signing the agreement. The Court has already discussed why Plaintiffs'

---

⁵ Plaintiffs claim that they are not seeking a private right of action and only cite the statutes and regulations to offer the Court a legal framework. Doc. 119 at 4.

⁶ Defendants contend that the claim involving Volvo was not included in the complaint or preserved in the pretrial order. The Court agrees that Plaintiff should have moved to amend to add this claim. And it is not clearly preserved in the pretrial order, although Plaintiffs do allege in their factual contentions that "Transport Funding misrepresented itself as the lender and orchestrated Volvo to act as the lender with Transport Funding acting as the intermediary." Doc. 107 at 7. Nevertheless, Plaintiffs present no evidence from which a reasonable jury could find in their favor on the claim, so its improper preservation does not matter.

overarching theory of liability is not viable. Defendants had no duty to disclose a futile legal theory, and Plaintiffs have not cited legal authority showing that such duty exists. The second argument fails because Plaintiffs have presented no evidence that Transport misrepresented its role in the transaction, that who paid Arrow was material, that Plaintiffs reasonably relied on any alleged misrepresentations, or that Plaintiffs suffered damages. Evidence supporting each of these elements is required for a fraudulent inducement claim. *See Stechschulte v. Jennings*, 298 P.3d 1083, 1096 (Kan. 2013). Plaintiffs also fail to provide authority suggesting that Transport had a duty to disclose that Volvo was its funding source. Without a duty, there can be no fraudulent omission. *Louisburg Bldg. & Dev. Co. v. Albright*, 252 P.3d 597, 618 (Kan. Ct. App. 2011).

Second, Plaintiffs claim that Transport was unjustly enriched because it received the benefit of the agreement with Plaintiffs, even if it paid off its agreement with Volvo. This argument is confusing. But it also falls with Plaintiffs' "vapor money" theory. Plaintiffs have presented no evidence that they conferred a benefit on Transport through "credits" when they signed the agreement. *See Hurtig v. Mattox*, 2017 WL 6542803, at *4 (Kan. Ct. App. 2017) (requiring a benefit conferred for unjust enrichment). In any event, the parties entered a contract. Unjust enrichment is generally unavailable when a contract defines the parties' obligations. *See Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1170-71 (D. Kan. 2006).

Finally, Plaintiffs argue that Transport did not suffer damages. But again, the evidence does not support their claim. Plaintiffs identify no evidence showing that Transport was repaid in full for the $38,801 that it paid on Plaintiffs' behalf. There is no evidence that any third party paid Transport, through "credits" or otherwise. Indeed, the evidence shows the opposite: Transport has not been repaid in full for Plaintiffs' loan.

8

Plaintiffs have presented no evidence or legal authority to support their theory of the case or their claims. Plaintiffs fail to present evidence or legal authority authorizing a return of their money or a ruling that they are entitled to keep the semi-truck. There is no evidence from which a reasonable jury could find in favor of Plaintiffs. The Court grants summary judgment in favor of Defendants.

### B.     Transport's Counterclaims.

Transport argues that it is entitled to both default judgment and summary judgment on its counterclaims for breach of contract and unjust enrichment. The Court turns directly to Transport's summary judgment arguments.[7]

#### 1.     Breach of Contract.

Transport counterclaims that Plaintiffs breached the security agreement when they stopped making payments on their loan. A party establishes breach of contract by proving five elements: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the [counterclaimant's] performance or willingness to perform in compliance with the contract; (4) the [counterclaim-]defendant's breach of the contract; and (5) damages to the [counterclaimant] caused by the breach." *Stechschulte*, 298 P.3d at 1098.

---

[7] Transport filed its counterclaims on April 10, 2023. Plaintiffs' answer or responsive pleading was due by May 2, 2023. Plaintiffs never answered or otherwise responded. Upon this record, the Court could direct the Clerk of Court to enter Plaintiffs' default. The Court could then evaluate whether default judgment is warranted.

That said, the Court prefers to resolve cases on their merits. Plaintiffs argue that they acted with excusable neglect, that Transport's request is too late, and that Plaintiffs have a meritorious defense. None of these arguments is persuasive. The Court nevertheless proceeds to the summary judgment inquiry because it is the more expedient way to resolve the matter.

First, Plaintiffs stipulated that they executed the agreement with Transport. Plaintiffs agreed to make thirty-nine monthly payments of $1,454.07 each. Transport agreed to pay the balance owed to Arrow. This is undisputed.[8]

Second, both sides benefited from the agreement. Transport paid Arrow $38,101 for Plaintiffs' purchase of the truck.[9] Plaintiffs agreed to pay Transport in return and received possession and use of the truck. Sufficient consideration is undisputed.

Third, Transport fulfilled its obligation under the agreement. Fourth, Plaintiffs stipulated that they only made twenty of the thirty-nine promised payments. And fifth, Transport has been damaged because Plaintiffs stopped paying. Specifically, Transport has been damaged by Plaintiffs' failure to pay the principal amount plus interest, delinquency fees, attorney's fees, and expenses. Plaintiffs agreed to pay all of these in case of default. These facts are undisputed.

Plaintiffs seek to avoid enforcement of the contract. The Court has already addressed most of their arguments. But there are a few more the Court briefly notes: Plaintiffs claim performance was impossible and that they rescinded the contract under the Truth in Lending Act ("TILA"). Neither argument renders the contract unenforceable. There are no grounds for impossibility; this argument again relies on Plaintiffs' position that the debt was discharged so there was nothing left to pay off. And the TILA only applies to consumer credit transactions. Plaintiffs warranted that the truck would only be used for business purposes during the financing period. The truck was used for hauling freight from the time of purchase until Plaintiffs stopped making payments. This

---

[8] Plaintiffs argue there was no meeting of the minds because corporations cannot form contracts with individuals. Plaintiffs claim that corporations "lack[] the inherent mental competence required for a genuine meeting of the minds." Doc. 113 at 9. Plaintiffs are incorrect. Corporations can and do form contracts with individuals. *See, e.g.*, *Vickers v. Wichita State Univ.*, 518 P.2d 512 (Kan. 1974) (recognizing a valid contract between an individual and an entity).

[9] Plaintiffs attempt to show that Volvo, not Transport, paid Arrow. Plaintiffs' argument is immaterial and a red herring. Regardless of whether Volvo "cut the check" to Arrow, the uncontroverted facts show that Arrow was paid and Transport repaid Volvo. The only entity that has not yet received what it bargained for is Transport.

made the semi-truck purchase a commercial transaction instead of a consumer transaction. *See Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 630-31 (D. Md. 2009). TILA's right to rescind therefore does not apply.

There is no genuine issue of material fact preventing entry of summary judgment in favor of Transport and against Plaintiffs on Transport's counterclaim for breach of contract. The Clerk of Court will enter judgment in the amounts of (1) the principal sum of $27,627.33, (2) interest through October 4, 2024, of $9,779.57, and (3) delinquency fees of $1,821.97 through October 4, 2024. Interest continues at the rate of $13.81 per diem until paid in full. Delinquency fees continue at the rate of $2.42 per diem until paid in full. Transport may move for its attorney's fees and legal expenses.[10]

### 2. Unjust Enrichment.

Transport also seeks default and summary judgment on its counterclaim for unjust enrichment. But the Court has determined there is a valid written contract. A claim for unjust enrichment generally is precluded by the existence of a written contract under Kansas law. *See Ice Corp.*, 444 F. Supp. 2d at 1170-71. The Court therefore denies this portion of Defendants' motion as moot.

### C. Sanctions.

Plaintiffs request sanctions. They allege that the affidavits signed by Transport's CEO and Arrow's Vice President of Operations were perjured and made without personal knowledge. They also allege that defense counsel committed misconduct. But Plaintiffs submit no evidence in

---

[10] The security agreement provides that Transport is entitled to possession of the semi-truck in the event of a default. Plaintiffs have defaulted. No reasonable jury could find the security agreement unenforceable, and Transport is therefore also entitled to possession of the truck.

support of their position. Bald assertions and conclusory allegations of untruthfulness are not enough. The Court denies Plaintiffs' request.

## IV.   CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 110) is GRANTED PART and DENIED IN PART AS MOOT. The Court grants Defendants summary judgment against Plaintiffs and grants Transport summary judgment on its counterclaim. The Court denies as moot Transport's request for summary judgment on its unjust enrichment claim.

THE COURT FURTHER ORDERS that Plaintiffs' motion for summary judgment (Doc. 113) is DENIED.

THE COURT FURTHER ORDERS that the Clerk of Court enter judgment in favor of Transport in the amounts of (1) the principal sum of $27,627.33, (2) interest through October 4, 2024, of $9,779.57, and (3) delinquency fees of $1,821.97 through October 4, 2024. Interest continues at the rate of $13.81 per diem until paid in full. Delinquency fees continue at the rate of $2.42 per diem until paid in full.

THE COURT FURTHER ORDERS that Plaintiffs' motion for a jury trial (Doc. 114) and Defendants' motion to enforce Plaintiffs' jury-trial waiver (Doc. 120) are DENIED AS MOOT. The case is closed.

IT IS SO ORDERED.

Dated: February 4, 2025         /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE